UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MARYAM KARIMI,<br><br>               Plaintiff<br><br>v.<br><br>TOWN OF BROOKLINE, MASSACHUSETTS<br><br>               Defendant | Civil Action No. 20-12127 |

**COMPLAINT AND JURY DEMAND**

### Introduction

1.  This is a complaint for discrimination and retaliation against the Town of Brookline by Maryam Karimi, an Iranian-American woman, who worked for the Brookline Library's circulation desk for fourteen-years, garnering the trust, appreciation and support of many patrons for her service to the Library before her wrongful termination in January 2017. Sara Slymon, the Library director, targeted Ms. Karimi for termination after Ms. Karimi complained about being passed over for a Library IT position on the basis of her gender and national origin. When Ms. Karimi refused to resign in the face of a series of retaliatory disciplinary actions, Director Slymon terminated her on the pretext that she had violated the Library's privacy and confidentiality policies by contacting patrons using email addresses maintained in the Library database. Director Slymon learned that Ms. Karimi had contacted patrons by email in October 2016, when approximately twenty patrons wrote the Library praising Ms. Karimi and supporting her in connection with her disciplinary appeals to the Library Trustees, Director Slymon's supervising body. Although Director Slymon had fully investigated

the email issue by December 16, 2016, including holding an investigatory hearing with Ms. Karimi and the Town's outside counsel, she did not fire Ms. Karimi until January 26, 2017, after a lawyer engaged by Ms. Karimi sent the Library Trustees a demand letter, on December 21, 2016, alleging that Director Slymon had engaged in a pattern of discriminatory and retaliatory conduct towards Ms. Karimi. Director Slymon fired Ms. Karimi because Ms. Karimi complained about discrimination, not to protect the privacy of the patrons who had tried to save Ms. Karimi's job.

## PARTIES

2. Plaintiff Maryam Karimi is a resident of Somerville, Massachusetts. Ms. Karimi was born in Iran. Ms. Karimi has been described by patrons of the Library as having "tan" colored skin.

3. Defendant Town of Brookline is a duly organized town in the Commonwealth of Massachusetts.

## JURISDICTION

4. This action is brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* and this Court has jurisdiction under 28 U.S.C. §1331. On January 26, 2017, Ms. Karimi filed charges of retaliation and gender and national origin discrimination against the Town of Brookline in the Massachusetts Commission Against Discrimination, which was cross-filed at the U.S. Equal Employment Opportunity Commission ("EEOC"). Ms. Karimi received a right to sue letter from the EEOC on or after September 1, 2020.

5. Venue is proper in this Court under 28 U.S.C. § 1391(b), because the events giving rise to the claims occurred in this district.

## FACTUAL ALLEGATIONS

6.      Ms. Karimi began working for the Library in August of 2003 and became a full time employee on the circulation desk in 2006. She has a degree in computer science.

7.      Chuck Flaherty, a white man, served as the Library Director until June 2014, when Sara Slymon, a white woman, was appointed to replace him. Ms. Slymon is the current Library Director. Soon after joining the Library, in October 2014, Director Slymon singled out Karimi and the only other Iranian-American Library employee for speaking Farsi to each other in the morning before the Library opened to the public, instructing the circulation supervisor to prohibit it. When Karimi's colleague wrote Slymon that the complaint against her and Karimi for speaking Farsi constituted discrimination based on national origin, Slymon wrote back that the "intent was not at all discriminatory." Slymon did not retract the direction not to speak Farsi or report the complaint of discrimination to the Town's HR department, as required by the Town's HR policy.

8.      The Board of Library Trustees is responsible for making policy for the Library, for hiring and firing the Library Director, and ultimately for evaluating the Library Director's performance annually.

9.      Sandra DeBow, a white woman, is the former Human Resources Director for the Town of Brookline. She served in that role between 2006 and 2018. The Human Resources Director is responsible for investigating complaints under the Town's anti-discrimination policy and advising the Town departments about employment matters.

10.     In the spring of 2018, Ms. DeBow resigned after the Town Administrator determined, based on an investigation by the Town Counsel, that she violated the Town's anti-discrimination policy and state law by requiring disabled veterans to produce their medical records as a condition of being considered for employment by the Brookline police department.

Ms. DeBow's misconduct was not publicized, and the Town agreed to pay her six month's severance pay pursuant to a nondisclosure agreement containing mutual releases of liability.

11. In the summer of 2018, the Town called Ms. DeBow to testify at a civil service hearing concerning her actions leading up to the termination of a African-American firefighter. Ms. DeBow denied being accused of any misconduct as the Brookline HR Director, including in regards to handling medical records, and testified that she resigned voluntarily. After the hearing, the Massachusetts Civil Service Commission reversed the firefighter's termination, finding that Brookline officials had "actively promoted a false narrative" about the firefighter after he reported receiving a racial slur from his supervisor on his voicemail in 2010. See Gerald Alston v. Town of Brookline, D1-16-170 (Civil Service Commission, February 14, 2019).

12. In the spring of 2015, the Library's IT Director (the position was formally titled Assistant Director of Technology to distinguish it from the position held by the Town's IT Director) noticed his resignation and Library officials began to discussing the minimum requirements for the job.

13. On March 30, 2015, the Assistant Director for Administration, Anne Reed, a white woman, wrote to Library Director Slymon:

> Assistant Director of Technology does not need to have MLS or MLIS but should have certification in computers and technology, college graduate majoring in computers. If we do not ask for MLS or MLIS, the candidate should be required to take a class on basic library service/technology paid for by the library.

Reed further explained on April 1, 2015:

> [I]f an individual has a computer/technology degree and we require the individual take the series of courses offered by the Massachusetts Library System for directors who do not have their MLS I feel the person would be able to understand and handle issues pertaining to libraries.

14. The Town nonetheless created a job posting for the Library IT Director position that listed a Masters in Library Science, "supplemented by additional training in library technology, computer hardware and network maintenance, and desktop applications" as "preferred" qualifications. The posting did not list a graduate degree in computers as a preferred qualification.

15. The job posting disfavored Ms. Karimi because she did not have the "preferred" qualification of a Masters in Library Science. Ms. Karimi nonetheless applied for the position based on its focus on IT.

16. Director Slymon assembled a hiring committee to help her review applications and schedule interviews for the position. Director Slymon included Colin Wilkins, a white male librarian assigned to the reference desk, on the committee. Mr. Wilkins had no expertise in computer science.

17. On May 24, 2015, Mr. Wilkins wrote an email to Director Slymon accusing Ms. Karimi of having "lied to a patron" about a Library policy and "escalating what should have been a benign renewal transaction." Ms. Karimi was not notified of Mr. Wilkins' accusation against her, which was false.

18. On May 26, 2015, Director Slymon informed Ms. Karimi that she was not going to be considered for the IT Director position. Ms. Karimi wrote to Ms. Slymon the next day and asked for the opportunity serve as an assistant to the new IT director. Ms. Slymon wrote Ms. Karimi that she would absolutely consider her for the assignment.

19. In June 2015, Director Slymon hired Hank Sway, a white man, for the Library IT director position. Mr. Sway did not have an academic background in computer science, was not

able to fix problems with the computer systems, and referred IT complaints to the Town's IT department. Sway informed Karimi that he was working on obtaining a certificate in technology.

20. In August 2015, Ms. Karimi's supervisor, Brenda Craig, an African-American woman, completed a Performance Appraisal for Ms. Karimi. Ms. Craig rated Ms. Karimi's performance as strong and outstanding in key categories and informed Director Slymon in the comments section that Ms. Karimi was "looking to get recognized and promoted."

21. The Library administration, including Mr. Sway, selected Brian Hodgdon, a white male librarian, and Mr. Wilkins to receive trainings on the Library's IT infrastructure from Ben Steinberg, an outside consultant and former Library employee, notwithstanding their lack of computer science degrees. Mr. Wilkins was later replaced by Roy MacKenzie, a white male librarian, who also did not have a computer science degree. Ms. Karimi was not considered for these trainings.

22. On October 14, 2015, HR Director DeBow obtained the Town and the Library Union's approval to change Brian Hodgdon's job description to include IT duties. Ms. Karimi was not notified about the change in Mr. Hodgdon's job description or given an opportunity to take on those IT duties.

23. On December 7, 2015, David Fried, a lawyer retained by Ms. Karimi, sent an email to HR Director DeBow attaching a letter raising concerns that the Town had discriminated against Mr. Karimi based on her national origin and gender by selecting Mr. Hodgdon to assist Mr. Sway with IT matters, despite Ms. Karimi's superior educational qualifications. Mr. Fried asked Ms. DeBow to provide "clarification of the duties and responsibilities of the position apparently created for Mr. Hodgdon."

24. The same day the Town received the letter, Director Slymon proposed that Ms. Karimi receive a "verbal warning" for two alleged offenses that had occurred earlier in the week, talking on her cell phone and eating toast before the Library opened to the public.

25. On December 10, 2015, HR Director DeBow responded to Attorney Fried's question about Mr. Hodgdon's position by sending a copy of Mr. Hodgdon's recently revised job description and an accompanying job posting, which included extensive IT duties. The posting provided by Ms. DeBow inaccurately and misleadingly stated on the bottom that it had been posted on August 13, 2014. Ms. DeBow did not disclose to Attorney Fried that the actual August 13, 2014 job posting did not include IT duties. Ms. DeBow copied Director Slymon on her misleading correspondence to Attorney Fried.

26. On December 15, 2015, Mr. Sway emailed the Library staff, announcing that Brian Hodgdon and Roy MacKenzie, another white man, had been named "official first responders" regarding IT issues. Mr. MacKenzie later told Ms. Karimi he had not applied for the position. Ms. Karimi was not given the opportunity to apply for these positions.

27. On December 29, 2015, Attorney Fried wrote to HR Director DeBow, stating that the job posting Ms. DeBow represented related to Mr. Hodgdon was not the one that Ms. Karimi had seen posted in August 2014. Attorney Fried asked Ms. DeBow to clarify the discrepancy and questioned whether the job description had been subsequently modified to include IT duties.

28. On January 21, 2016, HR Director DeBow responded to Attorney Fried by representing in a letter that the job posting for Mr. Hodgdon's position had been emailed to all Library employees and posted throughout the library. Ms. DeBow suggested that Ms. Karimi contact Colin Wilkins, her Union representative, if she had not received a job posting.

29. On January 25, 2016, Attorney Fried wrote to HR Director DeBow again, and again asking her to clarify whether the position posted on August 13, 2014 included IT duties.

30. On March 14, 2016, HR Director DeBow responded to Attorney Fried in a letter, declining again to come clean about the fact that she had only recently changed Mr. Hodgdon's job description to include IT duties.

31. In her letter, HR Director DeBow represented to Attorney Fried that Ms. Karimi had not "raised a claim" under the Town's anti-discrimination policy because she had not applied for Mr. Hodgdon's position when it was posted in August 2014 and therefore had forfeited the chance to perform the "technical work" outlined in Mr. Hodgdon's job description. Ms. DeBow's position was nonsensical given that she had not added "technical work" to Mr. Hodgdon's job description until October 2015 and had not provided Ms. Karimi the opportunity to compete for the revised position. Ms. DeBow advised Attorney Fried that Ms. Karimi should deal directly with the Library Union about any issues concerning the job posting and that she could not discuss the matter further.

32. HR Director DeBow deception prevented Ms. Karimi from establishing that she had been deprived of an opportunity to apply for the IT assistant position and was not discovered until after Ms. Karimi had filed an action with the Massachusetts Commission Against Discrimination.

33. After Library Director DeBow's last letter to Attorney Fried, Director Slymon began imposing punitive discipline on Ms. Karimi. Over a five month span beginning in June 2016, Ms. Slymon imposed 18-days of suspensions on Ms. Karimi.

34. On June 8, 2016, Director Slymon suspended Ms. Karimi for three-days based on a complaint by a patron who provided no specifics as to what Ms. Karimi had done wrong other

than to claim, "I get that she hates men." Although the patron withdrew the complaint by email the day after he made it, Director Slymon failed to disclose that information at Ms. Karimi's disciplinary hearing. (Two days before the suspension, a patron complimented Ms. Karimi's in an email to her supervisor: "Just so you know this woman is amazing, the smile with which she greets me and my children the moment we walk into the library doors is unforgettable and has been consistently there for years now." The patron wrote that Ms. Karimi had been a great help to her two children, ages five and ten.)

35. On June 21, 2016, Director Slymon suspended Ms. Karimi for five-days based on a complaint by Mr. Wilkins that she had taken a break from the circulation desk without seeking Mr. Wilkins's authorization. Ms. Karimi provided the Town with a doctor's note during the internal appeal process that established the break was necessary for medical reasons.

36. After the disciplinary hearing on Mr. Wilkins's complaint concluded, the Library Union president, Bruce Genest, met with Ms. Karimi and Mr. Wilkins in the same room and asked about the friction he perceived between them. Mr. Wilkins, who was Ms. Karimi's Union steward, became angry, turned red in the face, and yelled that he was Ms. Karimi's boss. Ms. Karimi pointed out that Mr. Wilkins was not, in fact, her supervisor, which made him more angry.

37. On September 2, 2016, after Mr. Sway resigned as the Library IT director, Ms. Karimi again applied for the position. She was not interviewed and the position was filled by a white woman, Callan Bignoli, who did not have a degree in computer science. Although Mr. Hodgdon resigned from the Library in 2016, Ms. Karimi was not given an opportunity to compete for his position as assistant to the Library IT director.

38. Ms. Karimi appealed her suspensions to the Library trustees and a hearing was scheduled for September 13, 2016.

39. On September 12, 2016, the day before the hearing, the Union agent assigned to represent her, Ed Nastari, told Ms. Karimi the Town was offering a deal: if Ms. Karimi resigned, the Town would not contest her application for employment benefits or a request to extend those benefits to the maximum of 40 weeks, the Town would pay her back her wages for the eight-days she had been suspended, and the Town would remove the two warnings from her file. Ms. Karimi rejected the offer.

40. On September 13, 2016, the Library Trustees continued Ms. Karimi's appeal hearing.

41. On October 5, 2016, Ms. Karimi met with Ms. Craig to go over her performance review, which had changed markedly from the year before. Ms. Craig told Ms. Karimi that "they" had told her to give only twos and threes (Needs Improvement and Satisfactory) to circulation desk employees. Ms. Karimi understood that "they" referred to Director Slymon and Assistant Director Reed. Ms. Karimi asked Ms. Craig if Ms. Karimi received a three (Satisfactory) for organization, who on the circulation desk would get a five (Outstanding). Ms. Karimi knew that her performance, including her organization, was Outstanding and better than the other employees. Ms. Craig acknowledged that Ms. Karimi's organizational skills were Outstanding. Ms. Craig claimed that she had given Ms. Karimi a three in organization because her self-evaluation was submitted one business day after the deadline of Friday, July 29, 2016. Ms. Craig acknowledged, however, that Julie Falsioni and Roberta Blumenthal, the other full-time circulation desk workers, both white women, had submitted their self-evaluations weeks

after Ms. Karimi.  Ms. Craig could not give Ms. Karimi specific reasons for why Ms. Karimi needed improvement in different categories.

42. On October 6, 2016, Director Slymon directed Ms. Karimi to appear for an investigatory meeting the following day on the charge of disregarding a supervisor's instructions with respect to scheduling and the charge of surfing the internet. The purported supervisor was Ms. Falsioni who was not assigned to supervise Ms. Karimi.  Ms. Karimi met with Ms. Slymon, the Town's outside labor counsel, Brian Magner, and a Union representative the next day and defended herself.

43. On October 15, 2016, under the subject line, "I work in the Brookline Public library and NEED YOUR HELP/SUPPORT....," Ms. Karimi wrote to patrons she had come to know over the years:

> Dear library friends,
>
> Several months ago, on June, I was misjudged by the library director for two incidents:
>
> 1- A library patron who falsely accused me of many offenses which include the following: of being sexist, homophobic, coming from a culture who hates men, or contending that something awful had happened to me in my childhood by a man, or…
>
> His exact letter is attached.
>
> 2- I was also falsely accused by Colin Wilkins, a coworker at the library who resents me and is very close to the director. He makes every effort to be promoted, despite being undeserving of such recognition.  He criticizes me for not doing my job properly and accuses me for taking extra breaks, which is a false accusation.
>
>  At the meeting I was called to explain what happened, even though I had produced witnesses to support my and had a doctor's note -- the voting was against me. As the result, the library director decided to suspend me from work for three days (for #1) and five days (for #2) without pay.

> I strongly felt that I've been discriminated against, so I filed a grievance through the labor union and requested an open hearing. I filed grievances three times and got rejected each time by the Town and the union. Now, according to the union, they are working with management to have an open hearing on Wednesday. However, they will only give me a maximum of a day notice to know if the hearing will take place, which doesn't give me enough time to prepare. As a result of these efforts to undermine my case, I have decided to take a different approach by asking for your support to spread the word. I would appreciate it if you could send an e-mail to the library trustees about your experiences of interacting with me over all the years (which has been good I hope, no needs to write otherwise ;-) I have worked at the main library.
>
> My hearing is scheduled for Wed. 10/19/2016 @ 7:00 p.m. Please send your e-mail few days before the hearing date.
>
> Library trustees e-mails:
> librarytrustees@brooklinema.gov
> Please see attachments, if interested to know more about the exact letters.
>
> Thank you in advance,
>
> --
> Maryam

44. Between October 15, 2016 and November 7, 2016, at least 20 patrons wrote emails to the Library Trustees, expressing their trust and confidence in Ms. Karimi and lauding her value to the Library. Not a single patron complained to the Library Trustees, or any Town representative, about having been contacted by Ms. Karimi via email.

45. On October 18, 2016, Mr. Genest provided Ms. Karimi with a draft settlement agreement from the Town. The agreement proposed to resolve Ms. Karimi's grievances of her three-day and five-day suspensions as well as pending discipline for Ms. Karimi's alleged offense of insubordination and improper internet use. It provided for the Town to pay Ms. Karimi back the pay she lost for the eight days she was suspended in exchange for Ms. Karimi agreeing to accept the suspensions as valid, including for purposes of "progressing discipline." The agreement provided that it "may be used by other parties in other proceedings regarding Ms.

Karimi, including but not limited to disciplinary hearings arbitrations, matters before the Massachusetts Commission Against Discrimination." Ms. Karimi rejected the proposed agreement.

46. On October 19, 2016, the Library Trustees postponed Ms. Karimi's appeal hearing again.

47. On November 1, 2016, Director Slymon called Ms. Karimi to a meeting in the Library with Ms. DeBow. Ms. Karimi brought her Union representative, Roy MacKenzie. Ms. Slymon told Ms. Karimi that it would be against Library policy for her to obtain patron emails from the Library's system for the purpose of soliciting their support.

48. Also on November 1, 2016, Ms. Craig confirmed Ms. Karimi's suspicion that the Library administration was engaged in a "cover up" to support the insubordination charge against her by falsely claiming that Ms. Falsioni was her supervisor. Referencing an email exchange between Ms. Falsioni and the Library administration, Ms. Craig wrote:

> This is Julie's [Falsioni] reaction to her job description that Anne [Reed] and I discussed with her and yes this is a cover-up. First, there was no record of her job description, then later it was discovered... Basically, Julie wants to be recognized as a supervisor, but pick and choose what she wants to be responsible for. For example, creating friction and confusion amongst PT [part-time] Staff like Karen and others, then go to Anne saying she is not being respected, and etc... Now that she is one of the favorites, they are actually listening to her. Keep in mind that this is the same employee that called in sick for years on a regular basis and left PT Staff alone...

49. On November 4, 2016, Ms. Karimi was suspended for ten-days by Director Slymon based on Ms. Falsioni's insubordination complaint and based on Ms. Slymon's report that she had observed Ms. Karimi "surfing" the internet.

50.     Prior to raising the issue of discrimination through Attorney Fried, Ms. Karimi had received only one suspension (for one-day) in her thirteen-year career with the Library. The suspension was for not allowing a patron to check a book out without a library card.

51.     On November 9, 2016, the Board of Library Trustees heard Ms. Karimi's appeal of her three-day and five-day suspensions and sustained them. One Trustee voted against Ms. Karimi's three-day suspension.

52.     At the November 9, 2016 hearing, Director Slymon admitted that nobody from the Town had spoken to the patron who made the complaint against Ms. Karimi that was used to justify her three-day suspension. Director Slymon did not disclose that the patron had withdrawn the complaint. Director Slymon claimed, falsely, that she had not seen the doctor's note excusing the break that was used to justify Ms. Karimi's five-day suspension before the hearing.

53.     On November 28, 2016, the Town provided Ms. Karimi with another draft settlement agreement. The agreement proposed to resolve Ms. Karimi's grievances of her three-day, five-day, and ten-day suspensions. It did not mention any pending discipline as had the prior proposal. It provided for the Town to pay Ms. Karimi back the pay she lost for five of the days she was suspended in exchange for Ms. Karimi agreeing to accept ten-days of suspensions as valid, including for purposes of "progressing discipline." The agreement again provided that it "may be used by other parties in other proceedings regarding Ms. Karimi, including but not limited to disciplinary hearings arbitrations, matters before the Massachusetts Commission Against Discrimination." Ms. Karimi rejected the proposed agreement.

54. On December 5, 2016, Director Slymon emailed a representative at the Library's Minuteman network that she had been instructed by Brookline's HR department to get access to Ms. Karimi's email account.

55. On December 16, 2016, Director Slymon conducted an investigatory meeting attended by the Town's outside labor counsel, Brian Magner, and Roy McKenzie, Ms. Karimi's Union representative. Ms. Slymon accused Ms. Karimi of violating Library policy by using the Library system to contact patrons by email. Ms. Slymon produced October 2016 emails that Ms. Karimi had sent from her Library account to her personal account that included a handful of patron email addresses. Ms. Karimi reported that she could not recall sending the emails to herself two months earlier.

56. On December 21, 2016, the Brookline Justice League, a Brookline-based civil rights organization, sent a demand letter on Ms. Karimi's behalf to the Library Trustees. The letter outlined a pattern of discrimination and retaliation against Ms. Karimi and set forth several settlement demands.

57. On December 28, 2016, the Town's outside counsel, Brian Magner, wrote to Ms. Karimi's Brookline Justice League counsel that "the Town believes it would be in violation of M.G.L. c. 150E if it directly discussed and negotiated with you matters related to Ms. Karimi's terms and conditions of employment."

58. The Town did not investigate the complaints of discrimination and retaliation by Ms. Karimi set forth in the December 23, 2016 letter and did not otherwise respond to Ms. Karimi's settlement demands.

59. On January 26, 2017, Ms. Karimi filed a charge of discrimination and retaliation against the Town with the Massachusetts Commission Against Discrimination. The same day

Director Slymon handed Ms. Karimi a notice of her intent to discharge Ms. Karimi for improperly accessing patron emails in October 2016.

60. On January 31, 2017, Director Slymon terminated Ms. Karimi's employment.

## COUNT ONE

**(Gender, National Origin, Race, and Color Discrimination Pursuant to Title VII of the Civil Rights Act of 1964, as Amended)**

61. Plaintiff repeats and re-alleges the above-paragraphs of this Complaint.

62. The Town of Brookline, through the acts and omission describe above, *inter alia*, has unlawfully discriminated against Maryam Karimi because of her gender, national origin, race, and color in violation of 42 U.S.C. § 2000 *et seq.* (Title VII of the Civil Rights Act of 1964, as amended).

63. All administrative and jurisdictional prerequisites to bringing this action have been met.

64. As a result of the Town of Brookline's discriminatory conduct, Maryam Karimi has suffered and continues to suffer damages including, but not limited to, loss of compensation and professional opportunities, loss of personal and professional reputation, pain and suffering, and emotional distress.

## COUNT TWO

**(Retaliation Pursuant to Title VII of the Civil Rights Act of 1964, as Amended)**

65. Plaintiff repeats and re-alleges the above paragraphs of this Complaint.

66. The Town of Brookline, through the acts and omissions describe above, *inter alia*, has retaliated against Maryam Karimi for having opposed practices forbidden by 42 U.S.C. § 2000 *et seq.* (Title VII of the Civil Rights Act of 1964, as amended) in violation of 42 U.S.C. § 2000 *et seq.* (Title VII of the Civil Rights Act of 1964, as amended).

67. All administrative and jurisdictional prerequisites to bringing this action have been met.

68. As a result of the Town of Brookline's unlawful conduct, Maryam Karimi has suffered and continues to suffer damages including, but not limited to, loss of compensation and professional opportunities, loss of personal and professional reputation, pain and suffering, and emotional distress.

## **RELIEF REQUESTED**

WHEREFORE, Maryam Karimi prays this Court:

    a. Enter a judgement in her favor on all counts of the Complaint;

    b. Reinstate her to her former position and order the Town to offer her an IT position comparable to the one she was unlawfully denied;

    c. Award all damages she proves at trial to have suffered, including, *inter alia*, compensatory damages, for back pay and loss of future earnings and harm to reputation, and damages for emotional distress;

    d. Award her attorneys' fees, costs and interest;

    e. Award her punitive damages; and,

    f. Award her such other relief as the Court deems just and proper.

**PLAINTIFF REQUESTS A TRIAL BY JURY ON ALL MATTERS SO TRIABLE**

                                          Respectfully submitted,

                                          MARYAM KARIMI

                                          By her attorneys,

                                          _____/s John McK. Pavlos_____
                                          John McK. Pavlos (BBO #641113)
                                          LAW OFFICE OF JOHN PAVLOS
                                          9 Canton Street
                                          Randolph, MA 02368
                                          attorneypavlos@gmail.com
                                          (508) 930-6465

                                          _____/s Brooks A. Ames_____
                                          Brooks A. Ames (BBO #641192)
                                          BROOKLINE JUSTICE LEAGUE, INC.
                                          1309 Beacon Street, 3rd Floor
                                          Brookline, MA 02446
                                          brooksames1@gmail.com
                                          (617) 763-5526

Dated: November 27, 2020